UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-80056-CIV-DIMITROULEAS

BROADWAY GATE MASTER FUND, LTD.,
PENNANT MASTER FUND LP, and
PENNANT WINDWARD MASTER FUND, LP,

    Plaintiffs,

v.

OCWEN FINANCIAL CORPORATION,
WILLIAM ERBEY, RONALD FARIS,
MICHAEL BOURQUE, and JOHN BRITTI,

    Defendants.
_____/

## OMNIBUS ORDER DENYING PLAINTIFFS' DAUBERT MOTIONS

THIS CAUSE is before the Court on Plaintiffs' Motion to Exclude the Expert Testimony of Marcel A. Bryar and Request for Oral Argument (the "Bryar Daubert Motion") [DE 82-1],[1] Plaintiffs' Motion to Exclude the Testimony of Dr. Glenn R. Hubbard and Request for Oral Argument (the "Hubbard Daubert Motion") [DE 85-1], (collectively, the "Daubert Motions"), and the hearing on the Daubert Motions held on November 3, 2017. The Court has carefully considered the Daubert Motions [DEs 82-1, 85-1], the Response briefs [DEs 107, 109], the Reply briefs [DEs 125-1, 128], and is otherwise fully advised in the premises. The Court finds that Defendants' experts, Bryar and Hubbard, satisfy the standards set out in *Daubert* and its progeny, so the Daubert Motions are denied.

### I.    BACKGROUND

---

[1] The Court considered SEALED versions of documents where applicable.

The Court assumes the reader's familiarity with the background of this action. Plaintiffs in this action, Broadway Gate Master Fund, Ltd. Pennant Master Fund LP, and Pennant Windward Master Fund, LP (collectively, "Plaintiffs") are members of the putative class pending before this Court in *In re Ocwen Fin. Corp. Sec. Litig.*, 14-cv-81057-WPD (S.D. Fla.) ("*Ocwen*"), who have chosen to opt out of the class action in order to pursue their individual claims against Defendants Ocwen Financial Corporation ("Ocwen"), William Erbey, Ronald Faris, Michael Bourque, and John Britti (collectively, "Defendants"). *Ocwen* was filed on August 12, 2014. This action was filed on January 12, 2016. On August 17, 2017, the Court preliminarily approved a settlement in *Ocwen*. *See Ocwen* [DE 330]. Since there is overlap between this action and *Ocwen*, the issues ruled upon by the Court in *Ocwen* will impact the proceedings in this case.

Plaintiffs assert five causes of action: (1) Count I, under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, against Defendants Ocwen, Erbey, and Faris; (2) Count II, under Section 18 of the Exchange Act, 15 U.S.C. § 17r, against Ocwen, Britti, and Bourque (false statements in Exchange Act filings); (3) Count III, under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against Erbey and Faris (control person liability); (4) Count IV, for common law fraud, against Ocwen, Erbey, and Faris; and (5) Count V, for negligent misrepresentation, against Ocwen, Erbey, and Faris.[2]

## II.     Daubert Motions

Both Plaintiffs and Defendants requested oral argument on their respective Daubert Motions. Plaintiffs filed two Daubert Motions. One motion seeks to exclude the testimony of regulatory compliance expert Marcel A. Bryar, Defendants' rebuttal witness to David R. Pawlowski. *See*

---

[2] The Court found that scienter for the Recusal Statements was not adequately plead against Faris. [DE 35 at 12, 16, 19].

[DE 82-1]. The second motion seeks to exclude the testimony of loss causation and damages expert Dr. Glenn R. Hubbard, Defendants' rebuttal witness to Dr. John D. Finnerty. *See* [DE 85-1].

### III.     Four Categories of Statements at Issue in this Case

This action is proceeding on four categories of statements: (1) representations concerning Erbey's recusal from transactions with Ocwen-related companies (the "Recusal Statements"); (2) statements concerning Ocwen's reported financial results and the effectiveness of its internal controls over financial reporting in connection with the August 2014 restatement of Ocwen's financial statements ("Restatement-related Statements"); (3) the December 1 statement concerning Ocwen's compliance with the NMS ("NMS Compliance Statement"); and (4) representations concerning the effectiveness of Ocwen's disclosure controls and procedures ("DC&P Statements").

### IV.     STANDARD OF REVIEW

Rule 702,[3] as explained by *Daubert* and its progeny, governs the admissibility of expert testimony.  *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).  "Under Rule 702 and *Daubert*, district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant."  *Rink*, 400 F.3d at 1291 (quoting *Daubert*, 509 U.S. at 589).  Expert

---

[3] Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)  the testimony is based on sufficient facts or data;
> (c)  the testimony is the product of reliable principles and methods; and
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

evidence is reliable and relevant—and, therefore, admissible—when the following factors are met:

> (1) the *expert is qualified* to testify competently regarding the matters he intends to address;
> (2) the *methodology* by which the expert reaches her conclusions is sufficiently *reliable* as determined by the sort of inquiry mandated in *Daubert*; and
> (3) the testimony *assists the trier of fact*, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* (internal quotations omitted) (emphasis added). The party offering the expert must prove admissibility—under these three prongs—by a preponderance of the evidence. *Daubert*, 509 U.S. at 1292.

Under the first prong, "experts may be qualified in various ways." *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Therefore, "[w]hile scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Id.* at 1260-61. "The qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009) (quoting *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 585 (N.D. Fla. 2009)).

Under the second prong, courts have set forth the following list of *nonexclusive* factors to assist in determining whether an expert's methodology is reliable: "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; (4) whether the technique is generally accepted by the scientific community." *Rink*, 400 F.3d at 1291 (citing *Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). "Notably, however, these factors do not exhaust the universe of considerations that may bear on

4

the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Tech*, 326 F.3d at 1341.  When determining whether a party has met its burden, "[a] trial judge has 'considerable leeway' in deciding how to determine when a particular expert's testimony is reliable and how to establish reliability." *Coconut Key Homeowners Ass'n, Inc. v. Lexington Ins. Co.*, 649 F. Supp. 2d 1363, 1371 (S.D. Fla. 2009) (quoting *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 302 (11th Cir. 2009)).  Accordingly, "[t]o the extent that expert opinions are derived from literature review, witness interviews and data analysis, they are not automatically rendered unreliable by their non-susceptibility to empirical verification." *United States v. Levinson*, 2011 WL 1467225, at *4 (S.D. Fla. Mar. 17, 2011) (citing *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir.2009)).

Under the third prong, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262.  "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262-63.  "[W]here an expert opinion has a tendency to confuse the trier of fact, it may not satisfy the helpfulness prong." *J.G. v. Carnival Corp.*, No. 12–21089–CIV, 2013 WL 752697, at *4 (S.D. Fla. Feb. 27, 2013) (citing *Frazier*, 387 F. 3d at 1263).  Moreover, to assist the trier of fact, "'[e]xpert testimony must be relevant to the task at hand, . . . *i.e.*, that it logically advances a material aspect of the case.'" *Coral Way, L.L.C. v. Jones*, No. 05-21934-CIV, 2006 WL 5249734, at *2 (S.D. Fla. Oct. 17, 2006) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004)).

### V.     Dr. Glenn R. Hubbard

Defendants have proffered the expert testimony of Dr. Glenn R. Hubbard ("Hubbard") for the purpose of rebutting Plaintiffs' loss causation and damages testimony.

Plaintiffs do not oppose Hubbard's qualification as an expert. Plaintiffs argue that Hubbard should be excluded because he failed to undergo independent analysis and instead relied on assumptions provided by Ocwen counsel. Plaintiffs argue that Hubbard's testimony is unreliable and unhelpful based on this reliance.

The Court finds that Plaintiffs' arguments go to weight and credibility, not admissibility, so the appropriate mechanism is vigorous cross examination. Hubbard satisfies the standards applicable to expert testimony.

### VI.     Marcel A. Bryar

Defendants have proffered Marcel A. Bryar ("Bryar") as a rebuttal witness on regulatory compliance. Plaintiffs argue that Bryar's opinions should be excluded as untimely, unhelpful, and unreliable. Bryar's testimony regarding the meaning of NMS compliance and Ocwen's obligations under the NMS is a timely rebuttal to Plaintiffs' expert, Pawlowski's testimony. The parties present divergent views about the meaning of "compliance" with the NMS. Bryar's and Pawlowski's testimony may be helpful for the jury in this regard. The Court finds that Bryar's testimony is admissible under the relevant standards applicable to expert testimony.

### VII.    Conclusion

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.    The Hubbard Daubert Motion [DE 84] is **DENIED**;

2.    The Bryar Daubert Motion [DE 81] is **DENIED**;

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 7th day of November, 2017.

WILLIAM P. DIMITROULEAS
United States District Judge